UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE ADAM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CARINGBRIDGE, INC.,<br><br>　　　　Defendant. | Case No. 25-cv-06042-WHO<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: Dkt. Nos. 16, 17, 18 |

In this putative class action, defendant CaringBridge, Inc. ("CaringBridge") seeks to transfer this case from the Northern District of California (the "Northern District") to a suitable state or federal court in Minnesota, where it is incorporated and headquartered. If venue is proper, alternatively, it seeks to dismiss plaintiff Janice Adam's ("plaintiff") complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Because plaintiff assented to a forum selection clause requiring disputes against CaringBridge to be brought in Minnesota, I agree that transfer to the District of Minnesota under 28 U.S.C. § 1404(a) is proper. Accordingly, CaringBridge's motion to transfer is GRANTED; I decline to reach the merits of CaringBridge's motion to dismiss.

**BACKGROUND**

CaringBridge is a nonprofit organization incorporated in Minnesota, with its headquarters and principal place of business located at 1715 Yankee Doodle Road, No. 301, Eagan, Minnesota 55121. Complaint ("Compl.") ¶ 13. CaringBridge operates the website www.caringbridge.com (the "Website"), which provides caregivers and individuals with "tools to share and document a health journey, simplify care coordination, and connect caregivers with a supportive community." *Id.* ¶ 2; Defendant CaringBridge Inc.'s Notice of Motion and Motion to Transfer ("Mot.") [Dkt.

1  No. 16] at 1.  CaringBridge operates this website and markets to consumers in California and
2  throughout the United States.  Compl. ¶ 13.
3       To use the CaringBridge website, visitors must first create a user account and agree to
4  CaringBridge's Terms of Use and Privacy Policy.  Mot. at 1–2; Declaration of Tom Booth
5  ("Booth Decl.") [Dkt. No. 16-1] ¶¶ 5–6.  According to plaintiff, to create an account, "individuals
6  must disclose their health condition to CaringBridge through a drop-down menu that includes
7  options such as 'Brain Cancer,' 'HIV/AIDS,' 'Substance Use Disorder,' and more."  Compl. ¶ 26.
8  Only through a registered account can a website visitor "start a 'CaringBridge' platform for
9  sharing their health journey or access such a platform that another user has created."  Mot. at 2;
10  Booth Decl. ¶¶ 6–7.  Without a CaringBridge account, users can only access the website's home
11  page, associated pages (such as "About" or "News"), as well as pages CaringBridge has set as
12  "public."  Mot. at 2; Booth Decl. ¶ 7.
13       Adam is a resident of Castro Valley, California, located in the Northern District.  Compl. ¶
14  12.  She created a CaringBridge account while residing in California in 2023, and, while signing
15  up, "input[ted] sensitive medical and personally identifying information."  *Id.*  She routinely
16  would visit the CaringBridge website in 2023 to "interact with family members and receive status
17  updates on the health condition of her loved one."  *Id.*  In doing so, Adam contends that she
18  repeatedly would provide sensitive medical and personally identifying information to
19  CaringBridge.  *Id.*
20       At the center of plaintiffs' complaint is the allegation that CaringBridge "aids and employs
21  separate and distinct third parties—Google, LLC ("Google") and Meta Platforms, Inc. ("Meta")
22  (together with Google, the "Third Parties")—to intercept, in real time, sensitive and confidential
23  communications and medical and personally identifying information sent to and/or received by
24  Plaintiff and putative class members through the Website."  *Id.* ¶ 28.  Plaintiff asserts that
25  CaringBridge utilizes Google Analytics tracking code on the Website to allow Google to
26  "intercept[] . . . confidential information . . . in real time as the information was entered into the
27  Website" by Adam and other class members.  *Id.* ¶¶ 29, 45.  In exchange, Google provides
28  CaringBridge with "analysis of that information, identifying website traffic and ad performance

2

and targeting ads for specific individuals." *Id.* ¶ 47. Similarly, Meta utilizes the Meta Pixel, "a piece of code that businesses, like Defendant, can integrate into their website" to "track visitor activity." *Id.* ¶ 55. When the Meta Pixel captures action on the website, it "sends a record to Facebook," who then "processes it, analyzes it, and assimilates it into datasets." *Id.*

Adam contends that while providing her "sensitive medical and personally identifying information" to CaringBridge, the Google Analytics and Meta Pixel tracking codes "intercepted" this information, without her consent, "to use for its own marketing, advertising, and analytics purposes." *Id.* ¶ 12. As a result, Adam filed this putative class action in the Northern District of California, raising claims under the California Invasion of Privacy Act ("CIPA"), the California Constitution, and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et seq. See id.* ¶¶ 73–117. The complaint proposes two potential classes: a nationwide class, composed of "all persons in the United States who . . . accessed and used the CaringBridge Service and had their confidential communications and/or sensitive medical or personally identifiable information collected and intercepted by a third party," as well as a subclass of California residents. *Id.* ¶¶ 61–62.

On October 20, 2025, CaringBridge filed a motion to transfer or, in the alternative, a motion to dismiss. *See* Mot. Plaintiff filed an opposition on November 3, 2025, *see* Plaintiff's Opposition to Defendant's Motion to Transfer or Dismiss ("Oppo.") [Dkt. No. 17], and CaringBridge replied on November 10, 2025. *See* Defendant CaringBridge Inc.'s Reply in Support of Motion to Transfer ("Repl.") [Dkt. No. 18].

**LEGAL STANDARD**

Under 28 U.S.C. § 1391(a), a "civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571

3

U.S. 49, 55 (2013).

When venue is challenged under 28 U.S.C. § 1406, district courts "must determine whether the case falls within one of the three categories set out in § 1391(a)." *Id.* at 56. If no category applies, "venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Id.* Should a district court choose to transfer a case, they may only transfer to a district where the action may have originally been brought, and if doing so would be for the "convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The party seeking transfer of venue must make a "strong showing of inconvenience" to prevail. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), *superseded by statute on other grounds*. A transfer may not be appropriate if it would "merely shift rather than eliminate the inconvenience." *Id.*

## DISCUSSION

### I. Venue is Proper in the Northern District of California Under 28 U.S.C. § 1406(a).

I must first decide whether venue is proper in the Northern District of California. CaringBridge argues that venue is improper because the venue selection clause in its Terms of Use requires that this action be heard in Minnesota. Mot. at 5. Additionally, CaringBridge contends that none of the venue factors under 28 U.S.C. § 1391 are met in the Northern District. *Id.* Conversely, Adam argues that the forum selection clause is inapplicable to this case and, even so, a "substantial part of the events" in this case occurred in the Northern District. *See* Oppo. at 1–5; 28 U.S.C. § 1391(a)(2).

#### a. The Venue Selection Clause Cannot be Considered Under § 1406(a).

A venue selection clause may be enforced by a motion to transfer under § 1404(a), not a motion to dismiss under § 1406(a) or Rule 12(b)(3). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). "A valid, applicable forum-selection clause changes the typical § 1404(a) analysis." *Bromlow v. D&M Carriers, LLC*, 438 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020) (White, J.). Upon finding a valid venue selection clause exists, district courts "must conclude that all the 'private interest' factors entailed in [the] motion to transfer analysis . . . weigh[] 'entirely in favor of the preselected forum.'" *Id.* (quoting *Sun v. Advanced China*

4

*Healthcare, Inc.*, 901 F.3d 1081, 1087–88 (9th Cir. 2018) (cleaned up)). The party opposing transfer bears the burden to show why the forum selection clause should not apply. *See id.* Accordingly, the "practical result is that a forum-selection clause should control except in 'unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

The "Choice of Law, Jurisdiction, and Venue" section in CaringBridge's Terms of Use provides:

> These Terms of Use and the relationship between you and CaringBridge shall be governed by and construed in accordance with the federal laws of the United States of America and the internal laws of the State of Minnesota, U.S.A., excluding conflict of law's provisions that would indicate the application of the laws of any other jurisdiction. Any legal action or proceeding relating to your access to, or use of, this service or these terms of use shall be instituted only in a state or federal court located in Hennepin County, Minnesota, USA. You and CaringBridge irrevocably agree to submit to the jurisdiction of such courts. You expressly waive any claim of improper venue and any claim that such courts are an inconvenient forum. If the courts of the country in which you reside should determine that the provisions of this paragraph are not enforceable, then you agree to submit to binding arbitration.

Booth Decl. ¶ 6 Ex. B ("Terms of Use") at 7–8. While neither party disputes that this Terms of Use is a valid venue selection clause, the parties dispute whether the clause applies to Adam after inputting information into the CaringBridge website, but before agreeing to the Terms of Use. CaringBridge invokes the venue selection clause in both its § 1406(a) and § 1404(a) arguments to assert that venue is improper in the Northern District. *See* Mot. at 5–6. But, as described above, venue selection clauses may only be enforced under a motion to transfer under § 1404(a), not a motion to dismiss under § 1406(a). *Atl. Marine*, 571 U.S. at 52. Accordingly, I cannot consider the venue selection clause in deciding whether venue is proper in the Northern District.

  **b.**  **The § 1391 Venue Factors Are Met.**

What I am left to consider in CaringBridge's § 1406(a) motion to dismiss is whether venue is proper in the Northern District under 28 U.S.C. § 1391. Under Section 1391, a civil action may only be brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to

personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

It is undisputed that Sections 1391(a)(1) and (a)(3) do not support venue in the Northern District. CaringBridge is incorporated and has its principal place of business ("PPB") in Minnesota, making Section 1391(a)(1) inapplicable. *See* Compl. ¶ 13. Further, as discussed in detail below, this case can be heard in state or federal court in Minnesota, lending little support to finding venue proper in the Northern District under Section 1391(a)(3).

Where the parties disagree is whether a "substantial part of the events or omissions giving rise to [Adam's] claim" occurred in the Northern District under Section 1391(a)(2). Adam contends that the harm inflicted on plaintiff occurred "at [the plaintiff's] browser, not where the signals were received at [the defendant's] servers." Oppo. at 6 (quoting *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022) (cleaned up)). To support this argument, Adam cites to *Bergstein v. Parmar*, which found that "[u]nder Ninth Circuit precedent, the location of the injury in a tort action is a relevant factor in determining whether venue is proper." No. CV 13-6167 DMG (MRWx), 2014 WL 12586073, at *7 (C.D. Cal. June 23, 2014). CaringBridge, conversely, argues that the "conduct giving rise to Plaintiff['s] claims—namely that CaringBridge 'aid[ed] and employ[ed] third parties . . . to intercept, in real time, sensitive and confidential communications and health information sent to and/or received by Plaintiff . . . through Defendant's Website'—occurred in Minnesota, not Northern California." Mot. at 5; Compl. ¶ 1.

As plaintiff readily admits, the location of the injury is "*a* relevant factor," though not dispositive. *Bergstein*, 2014 WL 12586073, at *7 (emphasis added). That "the effect of [defendant's] action might be felt" in the forum is not necessarily enough to establish venue. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867–68 (2d Cir. 1992) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 186 (1979)); *accord Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). However, Section 1381(b)(2) "may be the basis for venue in multiple districts and . . . does not restrict venue to the district in which the most substantial events or omissions giving rise to a claim occurred." *Dicks v. Cooks Junction, Inc.*, No. 22-cv-6495 (LJL), 2023 WL 2775830, at *6 (S.D.N.Y. Apr. 4, 2023) (citing *Kim v. Lee*, 576 F. Supp. 3d 14, 24

6

(S.D.N.Y. 2021), *aff'd*, No. 22-61, 2023 WL 2317248 (2d Cir. Mar. 2, 2023) (internal citations omitted)).

Case law seems to support plaintiff's view. For example, in *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022), the court found that intercepted communications occurred at the plaintiff's "browser, not where the signals were received" at defendant's servers. Applying this rationale to the facts alleged in the complaint, it seems plausible that the Google and Meta pixels "intercepted" plaintiff's information at her browser in California, rather than CaringBridge's servers in Minnesota. *See id.* That said, as CaringBridge points out, the complaint also recognizes that the pixels are a "piece of code" that forms part of the CaringBridge website. Repl. at 6; Compl. ¶¶ 29, 55. That website was designed and maintained in Minnesota, where CaringBridge is headquartered; no employees who worked on the website live in California. Booth Decl. ¶¶ 9–15.

This presents a close call. For purposes of this motion, I will assume plaintiff has met her burden in establishing that a "substantial part" of the events in this case arose in the Northern District. But, as explained below, venue being proper in the Northern District is immaterial to the outcome of this case because I find it proper to transfer this case to the District of Minnesota.

**II.     The Interests of Justice Require Transfer to Minnesota**

"Where venue is proper in another district, courts prefer to transfer the action, rather than dismiss the action." *Billing v. CSA-Credit Sols. of Am., Inc.*, No. 10-cv-0108 BEN (NLS), 2010 WL 2542275, at *4 (S.D. Cal. June 22, 2010). To determine whether transfer is appropriate under 28 U.S.C. § 1404(a), district courts generally consider if (1) the action "could have been brought" in the transferee court, and (2) whether transfer would be "in the interest of justice." *See id.*

A.     **This Case Could Have Been Brought in Minnesota.**

Whether a case "could have been brought" in the transferee court has been understood by the Ninth Circuit to require the "proposed transferee court [to] have subject matter jurisdiction, proper venue, and personal jurisdiction" over the matter. *Id.* (citing *Shapiro v. Bonanza Hotel Co.*, 185 F.2d 777, 780 (9th Cir. 1950)). A state or federal court in Hennepin County, Minnesota meets those criteria.

7

Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(a)(1), as CaringBridge is incorporated and has its principal place of business in Minnesota. Compl. ¶ 13. It also has subject matter jurisdiction because plaintiff brings a claim under the Class Action Fairness Act ("CAFA"), which provides federal courts with subject matter jurisdiction over a putative class action if the number of potential class members exceeds 100, there is minimal diversity, and the amount in controversy exceeds an aggregative value of $5,000,000. *See* 28 U.S.C. § 1332(d). Here, plaintiff is a California resident, so the minimal diversity threshold is met; so too are the class size and amount in controversy, as plaintiff's complaint alleges each of those categories are met. Compl. ¶¶ 13–14. Finally, CaringBridge is subject to general personal jurisdiction because its principal place of business—the CaringBridge headquarters—is located in Minnesota. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (cleaned up)).

Because venue, subject matter jurisdiction, and personal jurisdiction are proper, the District of Minnesota can hear this case.

B.   **Transfer to the District of Minnesota Best Serves the Interests of Justice.**

The remaining issue is whether transfer to the District of Minnesota would best serve the interests of justice. 28 U.S.C. § 1406(a); *Billing*, 2010 WL 2542275, at *4. This requires balancing "the plaintiff's interest to freely choose a litigation forum against the aggregate considerations of convenience of the defendants and witnesses and the interest of justice." *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *2 (N.D. Cal. Oct. 14, 2003) (Patel, C.J.). In the Ninth Circuit, these factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). But this list is "non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the

8

case at hand." *Martin v. Global Tel*Link Corp.*, No. 15–cv–00449–YGR, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015) (Gonzalez Rogers, J.). The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

I discuss the factors below. Given the forum selection clause, and in light of the other factors, transfer to the District of Minnesota best serves the interest of justice in this case.

### i. Location of Relevant Agreements

Under the "location of relevant agreements" factor, a complaint that "does not allege any contractual violation . . . neither favors nor disfavors transfer." *Huntsman v. Southwest Airlines Co.*, No. 19–cv-00083–PJH, 2019 WL 3254212, at *2 (N.D. Cal. July 19, 2019) (Hamilton, J.). Here, plaintiff brings various statutory and constitutional claims, not any theory of contractual liability. Accordingly, this factor is neutral.

### ii. State Most Familiar with Governing Law

"Although some courts have concluded that '[a] California district court is more familiar with California law than district courts in other states,' . . . a number of courts have held that '[f]ederal courts have an equal ability to address claims arising out of state law." *Vuori v. Grasshopper Cap. LLC*, No. 17–cv–06362–JCS, 2018 WL 1014633, at *21 (N.D. Cal. Feb. 22, 2018) (Spero, Mag.) (quoting *Hendricks v. StarKist Co.*, No. 13–cv–729 YGR, 2014 WL 1245880, at *2 (N.D. Cal. Mar. 25, 2014) (Gonzalez Rogers, J.); *Bloom v. Express Servs., Inc.*, No. C 11–00009 CRB, 2011 WL 1481402, at *5 (N.D. Cal. Apr. 19, 2011) (Breyer, J.)). Here, plaintiff has asserted claims under both California and federal law and seeks to certify California and Nationwide Classes. Oppo. at 11. Certainly, this Court "may be a marginally better forum" for plaintiff's state law claims, given the increased litigation of California state law in California federal courts. *See Vuori*, 2018 WL 1014633 at *21. But because "federal courts are deemed capable of applying the substantive law of other states," this factor is to "be accorded little weight." *Id.* (citing *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 261 (E.D.N.Y. 2010)). Accordingly, I do not find this factor particularly significant.

### iii. Plaintiff's Choice of Forum

The parties also dispute the weight that I should give to plaintiff's preference to litigate in California. Typically, a party seeking transfer must make "a strong showing . . . to warrant upsetting the plaintiff's choice of forum." *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1058 (N.D. Cal. 2015) (Spero, Mag.) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). However, while "great weight is generally accorded [to a] plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Plaintiff cites to *Senne* as controlling authority on the issue of the weight of plaintiff's preference in a class action suit. There, the Honorable Joseph Spero summarized case law on this factor, pointing out various "considerations that determine the degree of deference to which the plaintiff's choice of forum is entitled in the class action context":

> [C]ourts must consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action. Plaintiff's choice of forum would receive only minimal deference if the operative facts had not occurred within the forum and the forum had no interest in the parties or subject matter. In contrast, when there is no evidence that plaintiffs engaged in forum shopping and both plaintiffs and defendant have significant contacts with the Northern District of California, plaintiffs' choice of forum carries significant weight.

105 F. Supp. 3d at 1059 (internal citations omitted).

While *Senne* suggests that plaintiffs' choice of forum would hold weight in this analysis, the "calculus changes, however, when . . . a valid forum-selection clause, which represents the parties' agreement as to the most proper forum," exists. *Atl. Marine*, 571 U.S. at 63 (internal quotations omitted). When that is the case, courts "must deem all factors relating to the private interests of the parties . . . entirely in favor of the preselected forum." *Sun*, 901 F.3d at 1087–88.

As discussed above, plaintiff "created an account on the Website," which required her to assent to CaringBridge's terms and conditions, including its forum selection clause. Compl. ¶ 12; Booth Decl. ¶ 5. While plaintiff contends that "to create an account, individuals must disclose their health condition to CaringBridge through a drop-down menu that includes options such as

10

'Brain Cancer,' 'HIV/AIDS,' Substance Use Disorder,' and more," this does not appear to be accurate—rather, users input such information *after* agreeing to the Terms of Use and Privacy and Cookie Policy. *See* Booth Decl. ¶¶ 5–7; Compl. ¶ 29. The only information collected prior to assenting to these terms is the user's "IP address, geolocation, browser, operating system, device information, and Wi-Fi provider and router information," none of which appears to be connected to the plaintiff's argument in its complaint. *Id.*; Compl. ¶ 29. While plaintiff argues that this forms the basis for the CIPA wiretapping claim, these arguments and supporting authority do not outweigh the preference courts give to valid forum selection clauses. *See* Oppo. at 2–4.

Similarly, plaintiff's argument regarding the Terms of Use's application to this dispute is unconvincing. Plaintiff highlights that the Terms of Use applies federal and Minnesota law except for any "conflict of law's provisions that would indicate the application of the laws of any other jurisdiction," and that California courts apply Restatement (Second) of Conflict of Laws § 187 to "resolve disputes involving the enforcement of a choice-of-law provision." Terms of Use; Oppo. at 4. Under Restatement (Second) § 187, "the law of the state chosen by the parties applies unless . . . the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Gomez v. Great-W. Life & Annuity Ins. Co.*, 638 F. Supp. 3d 1156, 1159 (S.D. Cal. 2022) (internal quotations marks and citations omitted). Plaintiff claims that its CIPA claim "undoubtedly embodies a fundamental policy," as the California Legislature "declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" Oppo. at 4–5; *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) (quoting Cal. Penal Code § 630)). Because Minnesota has "no comparable wiretapping statute," plaintiff concludes that the California Subclass would be left "without a remedy for Defendant's violations of their privacy." Oppo. at 5.

Plaintiff cites to a line of authority suggesting that similar choice of law provisions cannot be enforced when there are fundamental conflicts between the state laws. In *In re Facebook Biometric Information Privacy Litigation*, for example, the court declined to enforce a California

11

1  choice of law clause when the clause was "contrary to a fundamental policy" of Illinois law raised
2  by the plaintiff, the Illinois Biometric Information Privacy Act ("IBIPA").  185 F. Supp. 3d 1155,
3  1169 (N.D. Cal. 2016) (Donato, J.).  Because applying California law would "writ[e] out of
4  existence" Illinois's "policy of protecting its citizens' privacy interests in their biometric data,"
5  and because California had no law or policy equivalent to the IBIPA at the time of this case, the
6  court concluded that Illinois had a greater interest in the outcome of the case.  *Id.* at 1169–70.
7  Accordingly, the court declined to enforce the California choice-of-law provision and instead
8  applied Illinois law.  *Id.* at 1170; *see also Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 812
9  (N.D. Ill. 2022) (decline to enforce Washington choice of law clause where doing so "would thus
10 thwart Plaintiffs' individual right to assert biometric-privacy claims").

11    While plaintiff cites good case law, it is inapplicable to the current posture of this case.  *In
12 re Facebook Biometric Info. Priv. Litig.* dealt with the application of the choice-of-law provision
13 *after* transfer of the case from the Northern District of Illinois due to Facebook's forum selection
14 clause requiring disputes to be heard in the Northern District of California.  185 F. Supp. 3d at
15 1158.  CaringBridge's choice of law exclusion clause does not impact the forum selection clause
16 and has no bearing on whether this action should be transferred.  Should the parties dispute which
17 state law applies, they may raise this issue with the District of Minnesota.  But this does not
18 fundamentally change the fact that a forum selection clause existed, that plaintiff agreed to this
19 clause upon creating an account, and that the clause requires "*any* legal action or proceeding . . .
20 [to] be instituted *only* in a state or federal court locate in Hennepin County, Minnesota."  Repl. at
21 4; Booth Decl. Ex. B.

22    Accordingly, I find that plaintiff's choice of forum has little weight in light of the forum
23 selection clause, which requires this dispute to be heard in Minnesota.

24    **iv.    Parties' Respective Contacts with the Northern District**

25    As discussed above, plaintiff is a California resident.  Compl. ¶ 12.  CaringBridge is
26 organized under the laws of Minnesota, and its principal place of business is in Bloomington,
27 Minnesota.  Bloom Decl. ¶ 10.  CaringBridge's thirty-six employees are "primarily located in
28 Minnesota," and the company does not have any employees or property in Northern California.

*Id.* ¶¶ 10–14. No "former employee who once had responsibility for the Website currently resides in Northern California." *Id.* ¶ 15.

On the one hand, CaringBridge has contacts with the Northern District because they purposefully availed themselves of the benefits of conducting business in California when providing their services on the Website. *See Vuori*, 2018 WL 1014633, at *21. However, as indicated above, plaintiff brings claims on behalf of both a California and nationwide class of CaringBridge users. Oppo. at 10. It is hard to see how the nationwide class has significant connections to the Northern District, apart from the named plaintiff's use of the CaringBridge website while being in Castro Valley. Compl. ¶ 12. Accordingly, this factor on balance appears neutral, or weighs slightly against transfer at best.

### v. Party and Witness Convenience

"The convenience to the witnesses is the most important factor in a section 1404(a) analysis, and the convenience of non-party witnesses is more important than the convenience of the parties." *Martinez v. BMW of N. Am.*, No. 3:19-cv-05479-WHO, 2019 WL 6727837, at *3 (N.D. Cal. Dec. 11, 2019) (Orrick, J.) (quoting *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV_05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014) (Gonzalez Rogers, J.)). In supporting a motion for transfer, the moving party bears the burden of "identify[ing] potential witnesses by name and describ[ing] their testimony." *Clark v. Sprint Spectrum L.P.*, No. C 10-03625 SI, 2010 WL 5173872, at *3 (N.D. Cal. Dec. 15, 2010) (Illston, J.).

CaringBridge contends that the District of Minnesota "will be more convenient for almost every witness—except for Plaintiff herself." Mot. at 7. This is because plaintiff's claims "center on CaringBridge's Website that was developed and is operated by CaringBridge in Minnesota," and that CaringBridge's "employees and its corporate officers and directors, personnel, offices and operations, and thus the bulk of its witnesses, are in Minnesota." *Id.* at 7–8 (citing Booth Decl. ¶ 10). In response, plaintiff argues that CaringBridge has failed to make a "clear showing of facts which establish such oppression and vexation of a defendant" to warrant transfer. Oppo. at 8 (citing *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1236 (9th Cir. 2011)). Plaintiff also asserts that because "modern technology has greatly reduced the burdens of traveling to

13

1    litigate in other forums," litigating in the Northern District should not be of great concern for

2    CaringBridge.  Oppo. at 9 (citing *Kukui Gardens Corp. v. Holco Cap. Grp., Inc.*, 664 F. Supp. 2d

3    1103, 1122 (D. Haw. 2008)).

4        On balance, I find this factor weighs in favor of transfer.  Even assuming plaintiff is correct

5    that the use of technology may mitigate the burdens on CaringBridge in litigating in the Northern

6    District, all potential key witnesses appear to reside in the District of Minnesota.  That the parties

7    may be able to conduct remote depositions or engage in other virtual pretrial conferences does not

8    outweigh the potential burden that may result should this case go to trial.

9        **vi.**     **Differences in Cost of Litigation**

10       The difference in the costs of litigation appears to favor transfer.  On the one hand, some

11   weight should be afforded to plaintiff's preference to litigate in the Northern District, as

12   corporations are generally "better-equipped than individuals to absorb increased litigation costs."

13   *Shultz v. Hyatt Vacation Marketing Corp.*, No. 10–CV–04568–LHK, 2011 WL 768735, at *6

14   (N.D. Cal. Feb. 28, 2011) (Koh, J.).  However, CaringBridge is also correct to raise that the

15   potential costs imposed on plaintiff are "minimized by the fact that this is a putative class action."

16   Mot. at 9 (citing *Mina v. Red Robin Int'l, Inc.*, No. CV 18-9472 PSG (GJSx), 2020 WL 4037163,

17   at *3 (C.D. Cal. Mar. 3, 2020)).  Further, the "costs of litigation can . . . be substantially lessened

18   if the venue is in the district in which most of the documentary evidence is stored."  *Ace Mold*

19   *(Heifei) Co. v. AliphCom*, No. CV 15–8127–RSWL–Ex, 2016 WL 8252923, at *3 (C.D. Cal. Oct.

20   17, 2016).  Because the majority of evidence in this case is located in Minnesota, overall costs of

21   litigation may be mitigated by transferring this dispute.

22       **vii.**    **Availability of Compulsory Process**

23       The availability of compulsory process to compel attendance of unwilling non-party

24   witnesses is neutral.  Neither party addresses this issue, though presumably both the Northern

25   District and the District of Minnesota have equal ability to compel unwilling non-party witnesses

26   to testify at trial.

27       **viii.**   **Ease of Access of Evidence**

28       The ease of access to evidence is "generally not a predominate concern in evaluating

whether to transfer venue" because "advances in technology have made it easy for documents to be transferred to different locations." *Cooper v. Curallux LLC*, No. 20–cv–02455–PJH, 2020 WL 4051466, at *4 (N.D. Cal. July 20, 2020) (Hamilton, J.) (citation omitted). However, transfer may be warranted if "some relevant amount of evidence is unavailable by means of electronic transfer and is located in the proposed venue." *Id.* at *5 (citation omitted).

This factor is neutral. Even assuming all relevant evidence is in Minnesota, CaringBridge acknowledges that the "digital age has made access to records easier." *See* Mot. at 9. CaringBridge has not shown how this evidence would be "unavailable by means of electronic transfer" during discovery or at trial. *See id*; *Cooper*, 2020 WL 4051466, at *5. Any inconvenience that may arise from making such documents electronically available does not by itself justify transfer.

### ix. Other Factors

Finally, the parties encourage me to consider other factors in my analysis, such as the policy interests of California and Minnesota in having this dispute heard in their respective forums, as well as the relative congestion of each district.

With respect to the policy interests of each state, I find this factor neutral. Plaintiff argues that because this case involves a California subclass and California law, California has a significant interest in "protecting local residents from [Defendant's] practices" by enforcing California law. Oppo. at 10–11 (quoting *Imran v. Vital Pharms., Inc.*, Nos. 18-cv-05758-JST, 18-cv-06300-JST, 2019 WL 1509180, at *6 (N.D. Cal. Apr. 5, 2019) (Tigar, J.)). That is certainly true. But, as CaringBridge points out, Minnesota has an "equal interest in regulating its in-state businesses." Repl. at 7 (citing *Jackson v. Tesla, Inc.*, 772 F. Supp. 3d 1111, 1127 (N.D. Cal. 2025) (Pitts, J.)). Both parties have a stake in this case.

Similarly, I find the court congestion factor neutral. CaringBridge cites statistics that the Northern District has more cases pending and resolves cases at a slower pace than the District of Minnesota. Mot. at 10. Even if true, the statistics they cite—20.5 months in the Northern District of California, versus 8.7 months in the District of Minnesota—does not appear significant enough to favor transfer of this putative class action on this factor alone. *See id.*

15

x.     **Balancing the Factors**

After balancing the *Jones* factors, I find that transfer to the District of Minnesota is proper. I do not minimize the fact that venue is proper in the Northern District, or that certain *Jones* factors seem to weigh against transfer. However, the existence of a forum selection clause requiring this case to be heard in the District of Minnesota indicates to me that transfer is proper. As discussed above, many of plaintiff's concerns about the choice of law can be resolved by the District of Minnesota, which can apply California law to this case if and when appropriate.

## CONCLUSION

For the foregoing reasons, CaringBridge's Motion to Transfer is **GRANTED.** This action shall be transferred to the United States District Court for the District of Minnesota for all further proceedings. All further hearings before me in this action are VACATED.

**IT IS SO ORDERED.**

Dated: December 5, 2025



William H. Orrick
United States District Judge